Affirm in part; Reverse and Remand in part; Opinion Filed April 11, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-11-00162-CV

---

CANDACE GUNN, INDIVIDUALLY,
AND AS NEXT FRIEND OF GARY GUNN, SR., Appellant

V.

KENNETH W. FUQUA, RODNEY JAY GAPPLEBERG,
FUQUA & GAPPLEBERG, LLP F/K/A FUQUA HUDNALL & GAPPLEBERG, LLP,
TODD E. TRACY, AND TRACY & CARBOY, Appellees

---

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-00811-J and DC-11-00974-J[1]**

---

# OPINION

Before Justices FitzGerald, Fillmore, and Richter[2]
Opinion By Justice Fillmore

In this appeal arising from a legal malpractice lawsuit, appellant Candace Gunn, individually,

and as next friend of Gary Gunn, Sr., asserts the trial court erred by (1) granting a "death penalty"

discovery sanction against appellant for failure to produce expert reports pursuant to a scheduling

order and denying appellant's motion to reconsider, (2) granting the "catch-all" motions for summary

judgment filed by appellees Kenneth W. Fuqua, Rodney Jay Gappleberg, and Fuqua & Gappleberg,

---

[1] These cause numbers were severed from cause number DC-07-03161.

[2] The Honorable Martin E. Richter, Retired Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

LLP f/k/a Fuqua Hudnall & Gappleberg, LLP (collectively the "Fuqua appellees") and by appellees Todd E. Tracy and Tracy & Carboy (collectively the "Tracy appellees"), and (3) denying appellant's motion for leave to file her fourth amended petition and by striking that pleading. We affirm the trial court's order denying appellant's motion for leave to file her fourth amended petition. We reverse the trial court's judgments and remand these causes to the trial court for further proceedings.

## Background

*Litigation Underlying the Legal Malpractice Lawsuit*

On October 23, 1999, Gary Gunn, Sr. was injured when the rear wheel came off the motorcycle he was riding. In December 1999, Gary Gunn, Sr. and appellant Candace Gunn retained the Fuqua appellees to represent them and their children in bringing claims arising from the motorcycle accident, and signed an attorney employment contract with the Fuqua appellees on December 14, 1999. In 2000, a lawsuit was filed claiming product liability and negligent service of the motorcycle: *Candace Gunn, Individually and as Next Friend for Gary Don Gunn, Sr., and as Next Friend for Derek Daniel Gunn, a Minor, Gary Don Gunn, Jr., Kimberly Kaye Reifein, and Christina Dawn Jones v. BMW of North America, Inc., Bayerische Motoren Werke AG, and Two Wheel World-Garland, Inc.*, Cause No. 00-03168-C, 68th Judicial District Court, Dallas County, Texas.[3] Plaintiffs were represented in cause number 00-03168-C by the Fuqua appellees.

In October 2001, Two Wheel World settled plaintiffs' claims in cause number 00-03168-C concerning negligent service of the motorcycle. A disagreement subsequently arose between the Fuqua appellees and Ed P. Cox of E.P.C. Engineering Resources, Inc., the expert hired by the Fuqua appellees in cause number 00-03168-C. As a result of the disagreement, the Fuqua appellees assisted

---

[3] Gary Don Gunn, Jr., Kimberly Kaye Reifein, and Christina Dawn Jones were adults when cause number 00-03168-C was filed.

appellant in locating another attorney to represent her. The Tracy appellees agreed to represent appellant.

On December 22, 2003, appellant as next friend of Gary Gunn, Sr., represented by the Tracy appellees, filed her original complaint in federal court alleging claims of product liability and seeking damages allegedly sustained by Gary Gunn, Sr. as a result of the motorcycle accident: *Candace Gunn as Next Friend of Gary Don Gunn, Sr., An Incapacitated Adult v. Bayerische Motoren Werk Aktiengesellschaft and BMW of North America, LLC (f/k/a BMW of North America, Inc.)*, Cause No. 2-03-CV-460, United States District Court for the Eastern District of Texas. Neither Candace Gunn, individually, nor the children of Candace and Gary Gunn, Sr. (Derek Daniel Gunn, Gary Don Gunn, Jr., Kimberly Kaye Reifein, and Christina Dawn Jones) were plaintiffs in the federal lawsuit filed against BMW.[4]

The Fuqua appellees filed, on behalf of appellant, individually and as next friend of Gary Gunn, Sr., and plaintiffs Derek Daniel Gunn, Gary Don Gunn, Jr., Kimberly Kaye Reifein, and Christina Dawn Jones, a motion for nonsuit of the remaining defendants in the lawsuit pending in the 68th judicial district court, cause number 00-03168-C. The trial court signed an order of non-suit in cause number 00-03168-C on April 30, 2004.

The record contains a letter agreement dated August 30, 2004 from BMW's counsel, and signed by appellee Todd Tracy, setting out the terms for settlement with BMW of Gary Gunn, Sr.'s claims brought in the federal court lawsuit through appellant as his next friend. Pursuant to stipulation of the parties, the federal court lawsuit, cause number 2-03-CV-460, was dismissed without prejudice by order signed October 13, 2004. Appellant, represented by the Tracy appellees,

---

[4] Derek Daniel Gunn had reached the age of majority at the time the federal lawsuit was filed.

filed a lawsuit against BMW in state district court to prove-up the settlement between BMW and appellant, as next friend of Gary Gunn, Sr.: *Candace Gunn as Next Friend of Gary Don Gunn, Sr., an incapacitated adult v. BMW of North America, LLC (f/k/a BMW of North America, Inc.)*, Cause No. 04-10793-C, 68th Judicial District Court, Dallas County, Texas. On December 12, 2004, the trial court conducted a prove-up hearing on the settlement in cause number 04-10793-C, and the trial court approved the settlement amount paid by BMW and the other settlement terms.

In 2005, appellant and Gary Gunn, Sr. were sued on a debt by Ann Glenn: *Ann Glenn v. Gary Gunn and Candace Gunn*, Cause No. 05-05804-J, 191st Judicial District Court, Dallas County, Texas. The Tracy appellees filed the answer of appellant and Gary Gunn, Sr. in that lawsuit. According to an affidavit of appellee Todd Tracy, during the pendency of cause number 05-05804-J, he learned appellant had retained counsel to file a legal malpractice lawsuit against him, thus creating a conflict of interest between the Tracy appellees and appellant. By letter dated July 31, 2006, the Tracy appellees wrote to appellant and Gary Gunn, Sr.:

> Since our law firm had represented you as Plaintiffs in the past we decided, as a courtesy to you, to file an answer [in cause number 05-05804-J] on your behalf. However, as you well know, our law firm specializes in vehicle safety related issues for Plaintiffs. We are not accustomed to dealing with defenses such as yours. As you might expect, because we are not experts in this type of lawsuit of which we filed an answer on your behalf, it is the firm's belief that the best option for both of us is to withdraw as your attorneys in this matter.

The Tracy appellees filed a motion to withdraw as counsel of record for appellant and Gary Gunn, Sr., as defendants in cause number 05-05804-J, stating a "conflict prevents counsel from being able to zealously represent the Defendants." The trial court signed an order granting the withdrawal of the Tracy appellees as counsel on October 16, 2006. The record does not indicate appellant and Gary Gunn, Sr. retained new counsel to represent them in cause number 05-05804-J. They did not appear for trial on December 11, 2006, and a final judgment was signed awarding plaintiff Glenn

$11,339.76, plus post-judgment interest and costs.

*The Legal Malpractice Lawsuit*

On April 6, 2007, appellant filed a legal malpractice lawsuit against the Tracy appellees: *Candace Gunn, Individually and as Next Friend of Gary Gunn v. E. Todd Tracy, Individually, Tracy & Carboy, Attorneys at Law, Ed P. Cox, Individually, and E.P.C. Engineering Resources, Inc.*, Cause No. 07-03161-J, 191st Judicial District Court, Dallas County, Texas.[5] On July 28, 2008, the Tracy appellees filed a motion to designate the Fuqua appellees as responsible third parties. On September 26, 2008, appellant filed her third amended petition in cause number 07-03161-J, naming the Fuqua appellees as defendants. On October 30, 2008, the Fuqua appellees filed an answer to appellant's third amended petition.

Appellant alleged the Tracy and Fuqua appellees were negligent in their legal representation of appellant, breached their fiduciary duty to appellant, and committed fraud against appellant by making various representations and failing to disclose information. In addition to actual damages, appellant sought exemplary damages based on alleged fraudulent and malicious representations by appellees. During the pendency of the legal malpractice action, interlocutory summary judgments were granted by the trial court in favor of the Tracy appellees. With the exception of appellant's allegation the Tracy appellees concealed from appellant "the negligent acts complained of and the adverse impact of these negligent acts on the value of [appellant's] claims by settlement or verdict," the trial court granted the Tracy appellees' motion for traditional summary judgment on appellant's

---

[5] Ed P. Cox and E.P.C. Engineering Resources, Inc. were voluntarily non-suited by appellant on January 20, 2011, and they are not parties to this appeal. The children of appellant and Gary Gunn, Sr. were not parties to the legal malpractice lawsuit and are not parties to this appeal.

breach of fiduciary duty allegations as impermissibly fractured legal malpractice claims.[6] The trial court also granted the Tracy appellees summary judgment on appellant's breach of contract claim.[7] Further, the trial court granted the Tracy appellees' second motion for traditional summary judgment on appellant's claims of fraud as impermissibly fractured legal malpractice claims and appellant's claim for exemplary damages based upon alleged fraud.[8] The trial court granted summary judgment in favor of the Tracy appellees as to appellant's allegations concerning the Tracy appellees' representation of appellant in the debt collection lawsuit brought against her and Gary Gunn, Sr. in *Ann Glenn v. Gary Gunn and Candace Gunn*, Cause No. 05-05804-J.[9]

On August 12, 2010, the Tracy appellees filed a motion to exclude appellant's expert witnesses under rule of civil procedure 193.6 and for sanctions under rules 215.2(b) and 215.3 for appellant's failure to comply with a court order and for abusing the discovery process. On August 19, 2010, the Fuqua appellees filed their motion to exclude appellant's expert witnesses, for sanctions under rules 215.2(b) and 215.3, and for joinder in the Tracy appellees' August 12, 2010

---

[6] The trial court's June 15, 2010 order granted summary judgment on the following alleged breaches of fiduciary duty by the Tracy appellees:

> Dishonestly representing to [appellant] their high degree of skill, experience, and expertise required to handle [appellant's] claims;
> Representing that there was a special relationship with the federal court that would benefit the clients;
> Constructing the settlement trust to serve the attorneys' interests, while disregarding the best interest of the client;
> Representing the client in a manner solely designed to further the self-interests of the attorney, rather than the client;
> Failing to disclose all conflicts and errors described herein (but phrased in the petition as a possible [Deceptive Trade Practices Act] violation; and
> Abandoning representation of [appellant] in [*Ann Glenn v. Gary Gunn and Candace Gunn*, Cause No. 05-05804-J].

[7] Appellant's counsel advised the trial court appellant did not assert a breach of contract claim against the Tracy appellees. However, appellant's pleadings allege appellant "bring[s] this cause of action to recover those damages occasioned by the negligence, breach of fiduciary duties, and breach of contract committed by the Defendants during their representation of [appellant]."

[8] The trial court denied summary judgment to the extent appellant's claims were based upon alleged malicious conduct.

[9] The Fuqua appellees also filed motions for summary judgment. The trial court denied the Fuqua appellees' motion for summary judgment based on the statute of limitations. The trial court did not rule on the Fuqua appellees' traditional motion for summary judgment asserting a lack of causation or on their no-evidence motion for summary judgment asserting there was no evidence the Fuqua appellees' conduct caused appellant injuries, that appellant suffered damages as a result of actionable conduct by the Fuqua appellees, or of an affirmative representation or failure to disclose by the Fuqua appellees.

motion.

On September 14, 2010, the trial court signed an order granting the Tracy appellees' motion to exclude appellant's expert witnesses and motion for sanctions and ordered appellant's claims against the Tracy appellees dismissed with prejudice. On September 28, 2010, the trial court signed an order granting the Fuqua appellees' motion to exclude appellant's expert witnesses and motion for sanctions and ordered appellant take nothing by way of her claims against the Fuqua appellees.

The Tracy and Fuqua appellees filed "Catch-All No-Evidence Motions for Summary Judgment," moving for summary judgment to dispose of all of appellant's claims in the "unlikely" event any of appellant's claims survived the trial court's sanction orders or any of appellant's claims "are revived." On January 20, 2011, the trial court signed orders granting the Fuqua appellees' catch-all motion for summary judgment and severing appellant's claims against the Fuqua appellees into a separate cause of action (DC-11-00811-J). On January 28, 2011, the trial court signed a final judgment in favor of the Fuqua appellees. On January 25, 2011, the trial court severed appellant's claims against the Tracy appellees into a separate cause of action (DC-11-00974-J), and on February 16, 2011, the trial court signed a final judgment in favor of the Tracy appellees. On August 22, 2011, the trial court signed an order granting the Tracy appellees' catch-all no-evidence motion for summary judgment.

Appellant filed this appeal.[10] Appellant asserts the trial court erred by (1) granting a "death penalty" discovery sanction against her for failure to produce expert reports pursuant to a scheduling order and denying appellant's motion to reconsider, (2) granting the "catch-all" motions for summary judgment filed by the Fuqua and the Tracy appellees, and (3) denying appellant's motion for leave

---

[10] Appellant filed appeal number 05-11-00162-CV from cause number DC-11-00811-J and appeal number 05-11-00205-CV from cause number DC-11-00974-J. Those appeals were consolidated in appeal number 05-11-00162-CV.

to file her fourth amended petition and by striking that pleading.

## Sanctions

In her first issue, appellant asserts the trial court erred by granting a "death penalty discovery sanction against [appellant] for failure to produce expert reports pursuant to a routine scheduling order, and in likewise denying [appellant's] motion to reconsider."

### Standard of Review

We review a trial court's imposition of sanctions under rule of civil procedure 215 for an abuse of discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *see also Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990) (imposing an available sanction is left to trial court's sound discretion). A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that its ruling was arbitrary or unreasonable. *Am. Flood Research, Inc.*, 192 S.W.3d at 583; *see also Mackie*, 796 S.W.2d at 704 (test for whether trial court abused its discretion in striking a party's pleadings is whether trial court acted without reference to any guiding rules and principles such that trial court's decision was arbitrary and unreasonable). We must conduct an independent review of the entire record in determining whether the trial court abused its discretion by imposing sanctions in this case. *See Am. Flood Research, Inc.*, 192 S.W.3d at 583; *5 Star Diamond, LLC v. Singh*, 369 S.W.3d 572, 577 (Tex. App.—Dallas 2012, no pet.).

A discovery sanction must be just; a direct relationship must exist between the improper conduct and the sanction imposed, and the sanction "should be no more severe than necessary to satisfy its legitimate purposes. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Discovery sanctions serve to secure compliance with the discovery rules, deter other litigants from violating the discovery rules, and punish those who violate the rules.

*5 Star Diamond, LLC*, 369 S.W.3d at 577; *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g).

Rule 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request. *See* TEX. R. CIV. P. 215.2; *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). Among the sanctions available under rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the actions or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." TEX. R. CIV. P. 215.2(b)(5). These sanctions, that adjudicate a claim and preclude presentation of the merits of the case, are often referred to as "death penalty" sanctions. *See generally Cire*, 134 S.W.3d at 840–41; *see also TransAmerican*, 811 S.W.2d at 918 ("When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery."); *Perez v. Murff*, 972 S.W.2d 78, 81 (Tex. App.—Texarkana 1998, pet. denied) (any sanctions which are "case determinative" constitute "death penalty" sanctions).

"Death penalty" sanctions are harsh and may be imposed as an initial sanction only in the most egregious and exceptional cases "when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). Generally, courts must impose—not just consider—lesser sanctions before resorting to the "death penalty." *See Cire*, 134 S.W.3d at 842. When reviewing "death penalty" sanctions, we are required to review the trial court's actions in light of the standards set out in *TransAmerican*. *Murff*, 972 S.W.2d at 82.

## Procedural History

Appellant filed the legal malpractice lawsuit, cause number 07-03161-J, in April 2007. In

June 2007, the trial court signed a scheduling order. That scheduling order contained no deadline for parties' designations of expert witnesses or production of experts' reports. In January 2008, appellant and the Tracy appellees filed an agreed motion for continuance of an April 2008 trial setting.

On January 24, 2008, the trial court signed an agreed scheduling order (the second scheduling order). The second scheduling order provided that appellant "shall designate experts and must provide reports" by March 7, 2008, unless appellee Todd Tracy could not be deposed by March 1, 2008, in which case appellant could seek additional time from the trial court to designate experts and provide reports.[11]

On March 31, 2008, appellant filed a motion to extend her deadline for designation of expert witnesses and production of expert reports. In her motion, appellant referenced the provision of the second scheduling order whereby she could seek additional time to designate expert witnesses and produce expert reports if Todd Tracy had not been deposed by March 1, 2008. However, Todd Tracy was deposed on February 23, 2008. In her motion, appellant sought at least an additional thirty days to designate expert witnesses "and provide reports," because transcripts of the depositions of Todd Tracy and Ed Cox had only recently been received and were necessary to enable appellant's expert "to prepare an adequate report."

The Tracy appellees filed their opposition to appellant's motion to extend the time to designate her expert witnesses and produce expert reports and a motion for sanctions. The Tracy appellees asserted appellant knowingly missed the trial court's deadline to designate her expert

---

[11] The second scheduling order stated that failure to file information set out in Rule 166(d)-(m), an estimate of the length of trial, designation of deposition testimony to be offered in direct examination, and any motions in limine seven days before an October 14, 2008 trial setting "may result in dismissal for want of prosecution or other appropriate sanction." While rule 166(i) refers to exchange of a list of expert witnesses who will be called to testify at trial, stating their address and telephone number, and the subject of the testimony and opinions that will be proffered by each expert witness, the second scheduling order does not indicate failure to designate experts and provide reports by March 7, 2008 may result in dismissal of the case or any other sanction.

witnesses and produce expert reports, and rule of civil procedure 193.6(a) requires exclusion of the testimony of expert witnesses who are not timely identified. In their motion for sanctions, the Tracy appellees also requested under rule of civil procedure 215.2(b) a monetary sanction and an order prohibiting appellant from introducing expert testimony into evidence, awarding the Tracy appellees' reasonable expenses, and taxing costs against appellant.

Although there is no written order signed by the associate judge in the record, on April 18, 2008, the Tracy appellees filed an appeal to the trial court of the associate judge's April 15, 2008 oral pronouncement of a thirty day extension for appellant's expert witness designation. On April 18, 2008, appellant filed her response to the Tracy appellees' motion for partial summary judgment on her breach of fiduciary duty and breach of contract claims and to the Tracy appellees' no-evidence motion for summary judgment. In that response, appellant moved the trial court to continue hearings on those motions for summary judgment until appellant's "expert has been designated and a written report filed with the court and opposing counsel."

At a May 9, 2008 hearing before the trial court, appellant's counsel stated he had a May 15, 2008 deadline to designate expert witnesses and produce expert reports, and the trial court stated it was not extending the May 15, 2008 deadline because expert witness designations should have "mostly occurred already by this point." At the hearing, appellant's counsel indicated he was meeting immediately after the hearing with appellant's expert witness to review his report.

On the May 15, 2008 deadline for appellant's expert witness designation, appellant filed her second motion for extension of time to designate expert witnesses. In that second motion for extension, appellant reiterated her attorney's representation at the May 9, 2008 hearing that he "had obtained the services of an expert witness and was scheduled to meet with the witness immediately following the hearing to finalize a written report." However, appellant's motion also informed the

court that the expert subsequently had declined to serve as a witness. On June 2, 2008, the trial court signed an order memorializing the trial court's announcement at the May 9 hearing that appellant "shall produce and serve [her] expert designations and reports on or before May 15, 2008."

On July 28, 2008, the Tracy appellees filed their motion to designate the Fuqua appellees as responsible third parties. On September 26, 2008, appellant filed her third amended petition in which she joined the Fuqua appellees as named defendants.

On October 8, 2008, the trial court signed a number of orders in the legal malpractice lawsuit. The trial court signed an order denying the Tracy appellees' appeal of the associate judge's extension of appellant's deadline for designating expert witnesses and producing expert reports. The order memorialized that the existing scheduling order remained in place and required appellant to designate her experts and serve expert reports by May 15, 2008. The trial court signed an order on the Tracy appellees' motion to compel production of a document shredder and fax machine and motion for sanctions. The trial court's order required appellant to produce the document shredder and fax machine for inspection and testing, but did not grant the requested sanctions. The trial court signed an order on the Tracy appellees' "composite" motion to compel discovery responses and motion for sanctions, granting in part the motion to compel but taking no action on the request for sanctions. The trial court signed an order on the Tracy appellees' motion to compel production of telephone and dumpster records and motion for sanctions. The trial court found appellant had failed to comply with the trial court's March 7, 2008 order to produce telephone and dumpster records and ordered production of the telephone records. Because appellant's counsel advised he had mistakenly failed to produce records in his possession and that he would do so promptly, the trial court made no further rulings regarding production of the dumpster records. The trial court ordered appellant's counsel, Jeff Forrest Smith, sanctioned for violation of rule of civil procedure 215.2(b). Smith was

ordered to pay $1000 into the registry of the trial court, representing the Tracy appellees' reasonable expense incurred in pursuing the motion, including their reasonable attorney's fees. *See* TEX. R. CIV. P. 215.2(b)(8).[12]

The trial court signed an additional October 8, 2008 order substituting Jules P. Slim for Jeff Forrest Smith as attorney of record for appellant and discharging Smith as appellant's attorney of record. In an October 15, 2008 letter brief to the trial court, appellant's new counsel stated, "[I]n deference to opposing counsel, [appellant's] discovery responses may be wanting, for which [appellant's attorney] will invest time and effort to remedy and apprize all parties of [appellant's] trial position."

On July 1, 2009, the trial court conducted a hearing on the Tracy appellees' motion to deem admissions and for sanctions. Although the trial court indicated some "obstructionist tendencies" were apparent in appellant's answers to the requests for admissions, the trial court did not believe the requested $10,000 sanction was justified. The trial court suggested that if the Tracy appellees submitted billing records in support of a monetary sanction, the trial court would review the billing records. The record does not contain an order granting a monetary sanction in response to this motion.

On July 26, 2010, the trial court conducted a scheduling conference and signed a scheduling

---

[12] The trial court made the following findings in support of the sanctions imposed under rule 215.2:

 a.  By failing to comply with a court order to produce records or a status report within 30 days, [appellant's] counsel has violated Rule 215.2.

 b.  The specific acts for which sanctions are imposed are:
 [Appellant's] counsels' failure to request records from the telephone provider(s); failure to provide a status report as ordered; and failure to produce Dumpster records as ordered.

 c.  There is a direct relationship between the sanction and the offensive conduct because:
 Imposing a monetary sanction on [appellant's] counsel for the Tracy [appellees'] reasonable fees and expenses incurred in filing this motion compensates the Tracy [appellees] for an effort they would not have expended had [appellant's] counsel complied with the Court's previous order.

 d.  This sanction is no more severe than necessary to promote full compliance because: there is a direct relationship between the sanction and the extra effort expended by the Tracy [appellees].

 e.  There is good cause to support the imposition of sanctions: for the reasons cited above.

–13–

order that specially set the legal malpractice lawsuit for trial on February 28, 2011 (the third scheduling order). That scheduling order, "submitted and agreed to" by appellant, provides that by August 2, 2010, appellant "shall designate experts and must provide reports."[13]

On August 2, 2010, appellant served her second amended disclosure and identified four expert witnesses: appellant's attorney was designated to testify regarding attorney's fees; James M. McCormack was designated to testify regarding the legal standard of care; Wayne Hunkins was designated to testify regarding the legal standard of care and the proper prosecution of products liability litigation; and Viola Lopez, an expert previously designated by a defendant in the underlying motorcycle accident litigation, was designated to testify regarding Gary Gunn, Sr.'s long-term care. Appellant provided a curriculum vitae only for Mr. McCormack and produced no written expert reports. Appellant's expert designations in her amended disclosure contain the following representations:

> Mr. McCormack will likely testify that the Fuqua and Tracy [appellees] breached their fiduciary duties and committed attorney negligence in their mishandling of the underlying Gunn file including claims of Gary Gunn, Sr. and those of [appellant] individually.

> Wayne Hunkins will likely testify that the Fuqua and Tracy [appellees] committed attorney negligence in their mishandling of the underlying Gunn file including the claims of Gary Gunn, Sr. and those of [appellant] individually. Mr. Hunkins is also familiar with products liability cases and may testify about the proper handling of the underlying case and their likely valuation were they properly prosecuted.

On August 12, 2010, the Tracy appellees filed a motion to exclude appellant's witnesses under rule of civil procedure 193.6 and for sanctions under rules 215.2(b) and 215.3 for appellant's failure to comply with the trial court's third scheduling order and for abusing the discovery process.

---

[13] The trial court struck through a provision in the third scheduling order stating that failure to file certain information with the trial court by February 21, 2011, including information specified in rule 166(i) such as a list of expert witnesses who will be called to testify at trial and the subject of the testimony and opinions that will be proffered by each expert witness, "may result in dismissal for want of prosecution or other appropriate sanction."

The Tracy appellees set out the chronology of appellant's failures to properly designate expert witnesses and produce expert reports in compliance with the trial court's orders, noting appellant had missed three court-ordered deadlines to designate experts and produce expert reports. The Tracy appellees asserted appellant's failure to comply with the trial court's scheduling order is sanctionable conduct under rule 215. The Tracy appellees further asserted appellant's failure to properly designate witnesses is also governed under rule 193.6, and appellant cannot satisfy one of the narrow exceptions to the rule excluding evidence for failure to timely designate or supplement discovery. *See* TEX. R. CIV. P. 193.6(a).[14] The Tracy appellees requested that the trial court exclude appellant's expert witnesses under rule 193.6 and dismiss appellant's claims with prejudice. They argued that, because appellant's conduct involves her expert designations, and expert opinions are necessary for appellant to prevail in the legal malpractice case, lesser sanctions are difficult to determine. They asserted that appellant's inability to locate and adequately designate experts and produce expert reports in the three years the lawsuit had been on file was sufficient justification to conclude appellant's claims lacked merit.

On August 19, 2010, the Fuqua appellees filed their motion to exclude appellant's witnesses and for sanctions under rules 215.2(b) and 215.3 and joinder in the Tracy appellees' August 12, 2010 motion. In their motion, the Fuqua appellees pointed out that appellant obtained new counsel in the summer of 2008. To accommodate appellant's new counsel, the trial setting was continued, which

---

[14] Rule 193.6 provides:

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a).

necessitated continuance of scheduling order deadlines. A scheduling conference was not held until June 15, 2010, almost two years after appellant's new attorney appeared in the case. The Fuqua appellees argued that despite the trial court's numerous orders concerning production of expert reports, and extensions of time for compliance, no expert report had been produced, and that failure constituted sufficient grounds to justify a presumption that appellant's claims lacked merit.

Appellant filed a response to the Tracy and Fuqua appellees' motions to exclude appellant's witnesses and for sanctions.[15] At the September 3, 2010 hearing of the Tracy and Fuqua appellees' motions to exclude witnesses and for sanctions, the trial judge stated appellant's failure to properly designate expert witnesses and provide expert reports was "definitely sanctionable." The trial court noted appellant agreed to the scheduling order specifically requiring production of expert reports. Moreover, the trial judge stated appellant's amended disclosures regarding experts were "insufficient, at best," noting the general substance of the experts' mental impressions and opinions and brief summaries of the bases for their opinions were not in the amended disclosures. *See* TEX. R. CIV. P. 194.2(f).[16] Noting the multiple expert witness designation deadlines that had been

---

[15] In response to appellees' motions, appellant argued the motions lacked certificates of conference. However, rules requiring certificates of conference are enforced at the option of the trial court. *See Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.) (sanction order should not be vacated based on failure to confer in advance of filing motions); *see also Fuentes v. Schooling*, No. 07-07-0118-CV, 2008 WL 5083012, at *3 (Tex. App.—Amarillo Dec. 3, 2008, no pet.) (mem. op.) (rejecting allegation trial court abused discretion in levying sanctions because motion to quash lacked certificate of conference; rules requiring certificates of conference are for trial court's benefit and may be enforced at option of trial court); *Tjernagel v. Roberts*, 928 S.W.2d 297, 300–01 (Tex. App.—Amarillo 1996, orig. proceeding).

[16] Rule 194.1 provides a party may obtain disclosure from another party of the information or material listed in rule 194.2. Under rule 194.2(f), party may request disclosure of:

(f) for any testifying expert:
(1) the expert's name, address, and telephone number;
(2) the subject matter on which the expert will testify;
(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:
(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
(b) the expert's current resume and bibliography.

TEX. R. CIV. P. 194.2(f).

imposed and that the case had been on file for over three years, the trial judge stated she did not believe she had an option but to grant "death penalty" sanctions in this case.

On September 14, 2010, the trial court signed an order on the Tracy appellees' motion to exclude appellant's witnesses and motion for sanctions under rules 215.2(b) and 215.3. The trial court granted the motion to exclude appellant's expert witnesses because appellant failed to comply with the court's third scheduling order regarding designation of expert witnesses and production of expert reports, granted the motion for sanctions, and ordered appellant's claims against the Tracy appellees dismissed with prejudice. In its order, the trial court made the following findings in support of sanctions under rules 215.2(b)(5) and 215.3:

> a. By failing to properly designate expert witnesses and to provide reports on July 31, 2010 as ordered, [appellant has] violated Rules 215.1, 215.2(b) and 215.3.
> b. The specific acts for which sanctions are imposed are [appellant's] repeated failure to comply with the Court's scheduling order and designate expert witnesses and provide written reports by a date certain. [Appellant] missed two expert designation deadlines in 2008. Over the Tracy [appellees'] objections in 2008, the Court provided [appellant] with additional time (more than two years) to find expert witnesses and to prepare reports. Despite this extended period, [appellant] failed to provide the Court ordered written reports on 07/31/10–the date the Court set for [appellant's] expert designation deadline at a June 2010 hearing. (The actual deadline was 08/02/10 by operation of the Texas Rules of Civil Procedure, which date was incorporated into a subsequently signed court order.)
> c. There is a direct relationship between the sanction and the offensive conduct because: [appellant has] had multiple deadlines to properly designate experts and [has] failed to do so. [Appellant's] experts are therefore stricken.
> d. This sanction is no more severe than necessary to promote full compliance because: [appellant has had] multiple deadlines to properly designate experts but [has] failed to do so. Trial is set in less than six months in a case that has been pending over three years.
> e. There is good cause to support the imposition of sanctions because: The Court believes that [appellant is] failing to timely prosecute this case.

On September 28, 2010, the trial court signed an order granting the Fuqua appellees' motion to exclude appellant's witnesses and motion for sanctions under rule 215.2(b) and 215.3. The trial court found appellant had been obligated to designate expert witnesses and provide expert reports

since as early as March 7, 2008, and, at appellant's request, the trial court had extended her deadline at least twice, with the most recent deadline being August 2, 2010. The trial court pointed out the multiple deadlines for designating expert witnesses and providing expert reports appellant failed to meet, that even as of the September 3, 2010 hearing on the Fuqua appellees' motion, appellant had not provided expert reports, and appellant "provided no evidence of good cause for failing to provide expert reports." The trial court concluded exclusion of the experts' testimony was the proper remedy and a lesser sanction would not serve the purposes of the discovery rules. Because the trial court concluded expert testimony was required for appellant to prevail on her claims against the Fuqua appellees, the trial court ordered appellant take nothing by way of her claims against the Fuqua appellees.

On December 12, 2010, appellant filed her motion to set aside the "death penalty" sanctions and exclusion of expert testimony. In her motion, appellant argued the trial court entered what amounted to a "death penalty" sanction by foreclosing appellant's ability to introduce evidence of attorney malpractice. Appellant argued the trial court had not previously threatened a sanction or levied a lesser sanction relating to a failure to designate expert witnesses and produce expert reports, nor was there a finding that the trial court considered lesser sanctions or that appellant's conduct justified the presumption that the lawsuit lacked merit. Appellant further argued that although the trial court had previously sanctioned appellant's counsel for discovery abuse, that sanction did not relate to appellant's designation of expert witnesses or production of expert reports. At the December 2010 hearing of appellant's motion to set aside the sanctions, appellant's counsel argued that he interpreted the expert report production language in the third scheduling order to refer only to reports existing as of the production deadline.

In response to appellant's motion to set aside the sanction excluding appellant's experts, the

Fuqua appellees asserted appellant did not misunderstand the trial court's orders requiring that expert witnesses be designated and expert reports be produced, pointing to appellant's statement in her March 31, 2009 motion to extend her deadline for designation of expert witnesses that an extension was "necessary for the witness to prepare an adequate report" and the statement in appellant's second motion for extension of time to designate expert witnesses that her attorney was scheduled to meet with an expert witness to finalize a written report. The Fuqua appellees argued the trial court's exclusion of expert witnesses was a proper sanction for appellant's conduct, because lesser sanctions would have no impact on appellant. The trial court denied appellant's motion to set aside the "death penalty" sanctions and exclusion of expert testimony.

## Analysis

Appellant timely identified her expert witnesses in accordance with the terms of the third scheduling order. What the trial court concluded appellant failed to do was provide information concerning the experts' opinions, including production of their expert reports. We must determine whether the trial court abused its discretion in excluding the experts and dismissing with prejudice appellant's claims against the Tracy appellees and ordering appellant take nothing on her claims against the Fuqua appellees as discretionary sanctions under rules 215.2(b) and 215.3. The crux of the issue turns on whether there is a direct relationship between the improper conduct and the sanctions imposed and whether "death penalty" sanctions imposed by the trial court were excessive. See TransAmerican, 811 S.W.2d at 917.

We must first determine whether there was a direct relationship between appellant's offensive conduct in failing to fully comply with the trial court's third scheduling order and the sanctions imposed by the trial court. See Cire, 134 S.W.3d at 839. For "death penalty" sanctions to be just, the trial court "must determine that 'a party's hindrance of the discovery process justifies

a presumption that its claims or defenses lack merit.'" *GTE Comm 'ns Sys. Corp.*, 856 S.W.2d at 730 (quoting *TransAmerican*, 811 S.W.2d at 918); *see also Cire*, 134 S.W.3d at 841 (discovery sanctions can be used to adjudicate the merits of party's clams only when party's hindrance of discovery process justifies a presumption that its claims lack merit); *5 Star Diamond, LLC*, 369 S.W.3d at 578.

In determining whether a party's hindrance of the discovery process justifies a presumption that her claims lack merit, we consider whether the failure to comply with discovery requirements is the fault of appellant, her counsel, or both. A just sanction should be "visited upon the offender." *TransAmerican*, 811 S.W.2d at 917. As the supreme court stated:

> The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation.

*TransAmerican*, 811 S.W.2d at 917. *See also Tex. Mut. Ins. Co. v. Narvaez*, 312 S.W.3d 94, 99–100 (Tex. App.—Dallas 2010, pet. denied) (trial court must attempt to determine whether offensive conduct is attributable to counsel only, to the party only, or to both); *Thompson v. Woodruff*, 232 S.W.3d 316, 322 (Tex. App.—Beaumont 2007, no pet.) (trial court abused its discretion in striking appellants' expert witness and dismissing their claims with prejudice; the record provided no indication appellants were personally responsible for the discovery abuse or even aware their attorney had failed to produce expert witness for deposition; trial court punished appellants for conduct of their attorney without first imposing lesser sanctions); *Murff*, 972 S.W.2d at 82 (there was no indication party had knowledge or role in failure to timely designate witnesses and, although striking witnesses seems to relate directly to failure to designate the witnesses, such sanction most

severely affects the party, not the attorney).[17]

There is no indication in the record of this case that appellant had any knowledge of, or role in, the failure of her counsel to timely provide a complete designation of expert witnesses and produce expert reports. The trial court made no finding that appellant was personally responsible for the failure of her counsel to fully comply with discovery rules and the scheduling orders in this case. Accordingly, we cannot conclude on this record that appellant's failure to fully comply with the third scheduling order justifies the presumption that her claims lack merit. We conclude there exists on this record no direct relationship between appellant's conduct and the extreme sanctions imposed by the trial court.

However, even assuming there was a direct relationship between appellant's conduct and the sanctions of striking appellant's expert witnesses and dismissing with prejudice appellant's claims against the Tracy appellees and ordering appellant take nothing by way of her claims against the Fuqua appellees, we conclude the "death penalty" sanctions imposed in this case were excessive. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004) (when causation is beyond jury's common understanding, expert testimony is necessary in legal malpractice claim); *Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 396 (Tex. App.—El Paso 1994, orig. proceeding) (exclusion of experts in medical malpractice case requiring expert testimony has a "death penalty" effect); *Murff*, 972 S.W.2d at 82 (exclusion of witnesses precluded appellants from presenting their case properly characterized as "death penalty" sanction).

Sanctions which terminate or inhibit the presentation of the merits of a party's claim "must be reserved for circumstances in which a party has so abused the rules of procedure, despite

---

[17]  *See also Perkins v. Patrick*, No. 05-98-00585-CV, 2000 WL 361524, at *2 (Tex. App.—Dallas April 10, 2000, no pet.) (not designated for publication) (under first prong of *TransAmerican*, trial court must at least attempt to determine whether offensive conduct is attributable to counsel only, to the party only, or to both).

imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court." *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding) (citing *TransAmerican*, 811 S.W.2d at 913). "A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican*, 811 S.W.2d at 917. It, therefore, follows "that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* "A sanction is excessive if lesser sanctions would have served the purposes of compliance, deterrence, and punishment." *5 Star Diamond*, 369 S.W.3d at 579. "[I]n all but the most egregious and exceptional circumstances, the trial court must test lesser sanctions before resorting to death penalty sanctions." *Cire*, 134 S.W.3d at 842.

While the trial court's September 28, 2010 order granting the Fuqua appellees' motion for sanctions indicates a lesser sanction would not serve the purposes of the discovery rules, there is no finding in the trial court's September 14, 2010 or September 28, 2010 orders granting sanctions under rule 215 indicating the trial court considered any less stringent sanction. Further, there are no orders in the record that impose lesser sanctions for appellant's failure to provide a complete designation of expert witnesses or produce expert reports pursuant to the trial court's third scheduling order or any prior scheduling order. "Death penalty" sanctions are appropriate as an initial sanction only in the egregious and exceptional case when they are "clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729. We conclude this is not such a case. Accordingly, it was necessary for the trial court to actually impose, not simply consider, lesser sanctions before resorting to "death penalty" sanctions. *See Cire*, 134 S.W.3d at 842. This the trial court did not do.

Clearly, the record contains evidence of dilatoriness on the part of appellant's counsel in

failing to designate expert witnesses and produce expert reports in compliance with prior scheduling orders and in failing to fully comply with requirements of the third scheduling order relating to designation of expert witnesses and production of expert reports, and we do not disagree with the trial court's determination the conduct was sanctionable. However, while we do not condone the conduct in this case constituting discovery abuse, we conclude the sanctions the trial court imposed were excessive and fail under *TransAmerican*. Given the facts in our record, we do not conclude that the conduct of appellant's counsel "exhibited such flagrant bad faith or callous disregard for the responsibilities imposed on him by the trial court that such severe sanctions were justified." *See Murff*, 972 S.W.2d at 83.

Thus, we must conclude the trial court abused its discretion in entering "death penalty" sanctions against appellant. We resolve appellant's first issue in her favor.

## Catch-All Summary Judgments

In her second issue, appellant contends the trial court erred by granting appellees' "catch-all" motions for summary judgment. After the trial court's September 14, 2010 and September 28, 2010 sanctions orders excluding the experts and dismissing with prejudice appellant's claims against the Tracy appellees and ordering appellant take nothing on her claims against the Fuqua appellees, respectively, the Tracy and Fuqua appellees filed "catch-all" no-evidence motions for summary judgment. In their "catch-all" motions for summary judgment, appellees asserted that, in the unlikely event any of appellant's claims survived the trial court's sanction orders or any of appellant's claims "are revived," they were entitled to summary judgment because the appellant had no expert witness to testify regarding the causation component of appellant's causes of action.

*Order Granting Catch-All Summary Judgment in Favor of Fuqua Appellees*

On January 20, 2011, the trial court signed orders granting the Fuqua appellees' catch-all no-

evidence motion for summary judgment and severing appellant's claims against the Fuqua appellees into a separate cause of action. The summary judgment order on the Fuqua appellees' catch-all motion for summary judgment superseded the trial court's September 28, 2010 order that appellant take nothing by way of her claims against the Fuqua appellees. *See Williams v. Tyra*, No. 06-06-00118-CV, 2007 WL 1648785, at *1–2 (Tex. App.—Texarkana June 8, 2007, no pet.) (mem. op.) (summary judgment order entered after order dismissing case for want of prosecution superseded dismissal order because trial court had power to "vacate, modify, correct, or reform" dismissal order); *see also Davis Family Blanco Road Prop. Trust v. Canyon Creek Estates Homeowners Ass'n*, No. 04-09-00007-CV, 2009 WL 3382232, at *4–5 (Tex. App.—San Antonio Oct. 21, 2009, no pet.) (mem. op.) (by signing partial summary judgment order recognizing trust's ownership of property, the trial court impliedly overruled earlier order dismissing trust's claims for lack of standing based on non-ownership).

Therefore, we consider whether the trial court erred in granting the Fuqua appellees' "catch-all" no-evidence motion for summary judgment. Appellant asserted claims of legal malpractice, breach of fiduciary duty, and fraud against the Fuqua appellees. The Fuqua appellees argued that, because each of appellant's causes of action against them contain the element of causation[18] on which expert testimony was required and the trial court had stricken appellant's experts, there was no-evidence of causation and they were entitled to summary judgment in their favor.

We have concluded that the trial court erred in imposing the "death penalty" sanction of

---

[18] *See Turtur & Assocs., Inc.*, 146 S.W.3d at 117 (to prevail on a legal malpractice claim, plaintiff must show the attorney owed the plaintiff a duty, the attorney breached that duty, the breach proximately caused plaintiff's injuries, and damages occurred); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) (elements of breach of fiduciary duty claim are (1) a fiduciary relationship between plaintiff and defendant, (2) defendant breached his fiduciary duty to plaintiff, and (3) defendant's breach resulted in injury to plaintiff or benefit to defendant); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249–50 (Tex. App.—Waco 2001, pet. denied) (statutory fraud requires showing of reliance on false representation which caused injury; negligent misrepresentation requires showing damages were proximately caused by reliance on misrepresentation).

striking appellant's experts and ordering appellant take nothing by way of her claims against the Fuqua appellees. Consequently, we conclude the trial court erred in granting the Fuqua appellees' "catch-all" no-evidence summary judgment based upon appellant's lack of expert testimony resulting from that sanction.

*Order Granting Catch-All Summary Judgment in Favor of Tracy Appellees*

On January 25, 2011, the trial court severed appellant's claims against the Tracy appellees into a separate cause of action, and on February 16, 2011, the trial court signed the final judgment in favor of the Tracy appellees. On August 22, 2011, the trial court signed an order granting the Tracy appellees' catch-all no-evidence motion for summary judgment. The rules of civil procedure limit a trial court's jurisdiction after it has entered a final judgment. *See* TEX. R. CIV. P. 329b; *see also Florance v. State*, 352 S.W.3d 867, 874 (Tex. App.—Dallas 2011, no pet.); *Alpert & Crain, Caton & James, P.C.*, 178 S.W.3d 398, 409 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed; the filing of a motion for new trial under rule 329b(e) or a motion to modify, correct, or reform the judgment under rule 329b(g), within the initial thirty-day period, extends the trial court's jurisdiction over its judgment up to an additional seventy-five days, depending on when or whether the court acts on the motion). Here, the trial court's order granting the Tracy appellees' catch-all motion for summary judgment was signed more than 180 days after the final judgment was signed. The trial court's order granting the Tracy appellees' catch-all motion for summary judgment signed after its plenary power had expired is void. *See State ex. rel Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1965) (judicial action taken after trial court's plenary power has expired is a nullity).

Having concluded that the trial court erred in granting the Fuqua appellees' "catch-all" no-

evidence motion for summary judgment, and that the trial court's order granting the Tracy appellees' "catch-all" motion for summary judgment is void, we resolve appellant's second issue in her favor.

## Leave to File Appellant's Fourth Amended Petition

Appellant asserts in her third issue that the trial court erred by denying her motion for leave to file her fourth amended petition. Appellant also argues the trial court erred by subsequently striking that amended petition.

Generally, a party may amend its pleadings at any time prior to seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX. R. CIV. P. 63. A trial court has no discretion to refuse the amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994); *Hakemy Bros., Ltd. v. State Bank & Trust Co., Dallas*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied).

The deadline for filing an amended petition imposed by rule 63 may be altered by the trial court in a scheduling order issued pursuant to rule 166. TEX. R. CIV. P. 63. A party may seek leave of court to amend its pleadings after the deadline imposed by a scheduling order entered pursuant to rule 166. *Id.*[19] We review a trial court's enforcement of a scheduling order for an abuse of discretion. *Hakemy Bros.*, 189 S.W.3d at 924; *see also Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary

---

[19] Rule 63 provides:

Parties may amend their pleadings . . . by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings . . . offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex. R. Civ. P. 63.

manner, or when it acts without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

When amendments which introduce new substantive matter have been refused by the trial court under rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise. *Hardin*, 597 S.W.2d at 349. On appeal, the trial court's ruling will not be disturbed unless the complaining party clearly shows an abuse of discretion. *Id.*

Appellant filed her original petition in this legal malpractice lawsuit on April 6, 2007. On June 21, 2007, the trial court signed a Uniform Scheduling Order. The scheduling order provided that any amended pleadings asserting new causes of action must be filed no later than thirty days before the end of the discovery period. Following entry of that scheduling order, appellant filed her first amended petition on June 28, 2007, and her second amended petition on September 25, 2007.

On January 15, 2008, appellant and the Tracy appellees filed an agreed motion for continuance of the April 7, 2008 trial setting and for an October 14, 2008 special trial setting. The trial court's second scheduling order provided that amended pleadings adding a new claim were to be "complete" by April 1, 2008, and amended pleadings not adding a new claim were to be "complete" by August 1, 2008. On September 26, 2008, appellant filed her third amended petition adding the Fuqua appellees as defendants in the lawsuit. Appellant re-filed her third amended petition on August 19, 2009.[20]

The trial court's July 26, 2010 third scheduling order specially set the lawsuit for trial on February 28, 2011. That scheduling order, reflecting that it was "submitted and agreed to" by appellant, includes the deadlines of August 14, 2010 for filing a motion to amend pleadings adding

---

[20] The re-filed third amended petition states it is "identical in all respects" to appellant's previously filed third amended petition, it was being re-filed "in an abundance of caution for strict compliance" with chapter 33.004(e) of the civil practice and remedies code, and appellant did not by re-filing the pleading "re-assert any matters, claims, or otherwise, the subject matter thereof having been already ruled on" by the trial court.

a new claim, and December 15, 2010 to amend pleadings that do not add new claims.

After the deadline for filing an amended pleading adding a new claim, on August 16, 2010, appellant filed a motion for leave to file her fourth amended petition against the Tracy and Fuqua appellees. In her motion, appellant stated that all facts pleaded in her fourth amended petition are contained in depositions and documents produced by defendants, and, therefore, no prejudice or surprise could be alleged in good faith by the appellees. Appellant's fourth amended petition was filed contemporaneously with her motion.

In the Fuqua appellees' August 27, 2010 response in opposition to appellant's motion for leave to file her fourth amended petition, they argued the lawsuit had been on file for over three years, and appellant's proposed fourth amended petition asserted new claims of alleged violations of the Deceptive Trade Practices Act (DTPA), *see* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(A) (West 2011), of negligence, negligence per se, and gross negligence for their alleged violation of a rule of professional conduct, *see* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(a), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (West 2005), and for a declaratory judgment. The Fuqua appellees objected to appellant's fourth amended petition based on surprise and prejudice.

On September 3, 2010, the Tracy appellees also filed objections to appellant's proposed fourth amended petition. The Tracy appellees argued the proposed pleading attempted to overrule the trial court's prior orders granting various summary judgments by reviving the dismissed claims, incorporated new factual allegations that contradict Candace Gunn's prior deposition testimony in the legal malpractice action and in her prior sworn testimony at the prove-up hearing of the settlement of Gary Gunn, Sr.'s claims against BMW. The Tracy appellees also argued appellant's fourth amended petition added a DTPA claim, a claim for declaratory judgment, allegations for disgorgement of attorney's fees, and a fraud allegation to the previously-pleaded misrepresentation

claim, and the pleading significantly altered the factual background of the litigation.[21]

On October 26, 2010, the trial court conducted a hearing on appellant's motion for leave to file her fourth amended petition. Appellant relied on documents produced in discovery by the parties to rebut appellees' prejudice and surprise objections to the newly-asserted causes of action in appellant's proposed fourth amended petition. Appellant argued the newly-asserted causes of action were based on existing facts.

In January 2011, the trial court signed orders denying appellant's motion for leave to file her fourth amended petition and striking appellant's fourth amended petition that had been filed contemporaneously with her motion. The trial court's order striking appellant's fourth amended petition contains the trial court's specific findings that appellant's fourth amended petition added new claims and causes of action, was filed after the deadline in the trial court's third scheduling order for filing new claims, and was prejudicial to the fair trial of the lawsuit.[22]

Here, appellant moved to file her fourth amended petition after the deadline imposed by the trial court's third scheduling order, and the proposed fourth amended petition asserted new claims of alleged DTPA violations, of negligence, negligence per se, and gross negligence for alleged violation of a rule of professional responsibility, a claim for declaratory judgment, allegations relating to disgorgement of attorney's fees, and a fraud allegation to a previously-pleaded misrepresentation claim. The amended pleading was prejudicial where appellant attempted to assert new causes of action, and appellees timely objected to the amended pleading. *See Kilpatrick*, 874 S.W.2d at 658 (Tex. 1994). On this record, appellant has failed to establish the trial court abused

---

[21] On October 22, 2010, the Tracy appellees filed a supplemental objection to appellant's motion for leave to file her fourth amended petition, arguing the petition was moot because the trial court dismissed the Tracy appellees by order signed September 14, 2010.

[22] At the hearing, the trial court stated it had to deny appellant's motion for leave to file her fourth amended petition, because the case had been "going on too long."

its discretion in denying appellant's motion for leave to file her fourth amended petition or for striking appellant's fourth amended petition. We resolve appellant's third issue against her.

## Conclusion

We conclude the trial court did not err in denying appellant's motion for leave to file her fourth amended petition. We conclude the trial court erred in striking appellant's expert witnesses and in granting the Fuqua appellees' and the Tracy appellees' "catch-all" no-evidence motions for summary judgment. We reverse the judgments of the trial court and remand these causes to the trial court for further proceedings.

_____
ROBERT M. FILLMORE
JUSTICE

110162F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CANDACE GUNN, INDIVIDUALLY, AND AS NEXT FRIEND OF GARY GUNN, SR., Appellant

No. 05-11-00162-CV      V.

KENNETH W. FUQUA, RODNEY JAY GAPPLEBERG, FUQUA & GAPPELBERG, LLP F/K/A FUQUA HUDNALL & GAPPLEBERG, LLP, TODD E. TRACY, AND TRACY & CARBOY, Appellees

Appeal from the 191st Judicial District Court of Dallas County, Texas. (Tr.Ct.Nos. DC-11-00811-J and DC-11-00974-J).
Opinion delivered by Justice Fillmore, Justices FitzGerald and Richter participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's order denying appellant Candace Gunn, Individually, and as Next Friend of Gary Gunn, Sr.'s motion for leave to file her fourth amended petition. The judgments of the trial court are **REVERSED** and these causes are **REMANDED** to the trial court for further proceedings. It is **ORDERED** that appellant Candace Gunn, Individually, and as Next Friend of Gary Gunn, Sr. recover her costs of this appeal from appellees Kenneth W. Fuqua, Rodney Jay Gappleberg, Fuqua & Gappelberg, LLP f/k/a Fuqua Hudnall & Gappleberg, LLP, Todd E. Tracy, and Tracy & Carboy.

Judgment entered April 11, 2013.


ROBERT M. FILLMORE
JUSTICE