

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-17-00208-CV

___

SABRINA K. GRIGGS, TRUSTEE OF THE GLORIA A.
GRIGGS REVOCABLE LIVING TRUST, APPELLANT

V.

DALHART BUTANE & EQUIPMENT CO., LTD., ETTER WATER WELL, LLC,
D/B/A ETTER WATER WELL SERVICE AND DALE BALL, APPELLEES

___

On Appeal from the 84th District Court
Ochiltree County, Texas
Trial Court No. 14123, Honorable Curt Brancheau, Presiding

___

June 25, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Dalhart Butane & Equipment Company, Ltd. (DBE) sued Sabrina Griggs, trustee of the Gloria A. Griggs Revocable Trust (Griggs), to foreclose a mechanic's lien on trust property. Griggs answered and filed a counterclaim. With leave of court Griggs joined Etter Water Well Service, LLC and its employee or agent, Dale Ball, as third-party defendants. Etter filed a counterclaim against Griggs. DBE's claim against Griggs, and Griggs' counterclaim, were both resolved in favor of DBE through death-penalty sanctions

against Griggs for discovery abuse. Through a hybrid motion Etter and Ball obtained summary judgment against Griggs on Griggs' claim for damages and on Etter's counterclaim for damages. The court incorporated its rulings into a final judgment resolving all claims. Griggs appeals. The judgment will be reversed in part and otherwise affirmed.

Background

According to Griggs, DBE improperly drilled an irrigation well on trust property in Ochiltree County, and did not complete the well on time, causing Griggs to lose a crop. Griggs refused to pay DBE for its work, prompting DBE's suit, and Griggs' counterclaim. DBE served Griggs with interrogatories and requests for production "concerning the claims and damages alleged in" Griggs' counterclaim. Following DBE's motion to compel and for attorney's fees, on July 14, the court signed an order requiring Griggs to respond, without objection, to DBE's written discovery and within ten days pay DBE attorney's fees of $1,100. Griggs did not pay the $1,100.

Griggs served responses to DBE's discovery requests but DBE believed them inadequate. After July 29 correspondence to Griggs identifying the four specific deficiencies it found in Griggs' responses and demanding their correction, DBE filed a second motion to compel and request for sanctions on August 26. The motion pointed out that Griggs had not paid the $1,100 sanction ordered on July 14, and requested that Griggs' counterclaim be struck. In a written response, Griggs argued there could be no consideration of lesser sanctions on submission only, that death-penalty sanctions could

not be used to adjudicate the merits of a defense, and that she had named two experts with written opinions disputing the adequacy of the well DBE drilled.

On November 21, the trial court conducted a short live hearing. The court heard only from counsel. Counsel for DBE gave a brief assessment of the merits of the case from DBE's perspective. He asked to have Griggs' counterclaim struck because she had not provided evidence of damages and DBE's liability. Counsel added that DBE did not seek death-penalty sanctions on the entire case. Griggs could still "put on a defense to our lien foreclosure case." Besides requesting Griggs' counterclaim be struck, DBE's counsel asked for a monetary sanction of $6,600 consisting of the yet unpaid $1,100 awarded on July 14, plus current attorney's fees, and travel expenses.

On December 1, the court signed an order dismissing Griggs' counterclaims with prejudice and awarding DBE $6,600. It further ordered: "If [Griggs] fails to pay the above specified sum to [DBE] within ten (10) days, then Final Judgment shall be entered in favor of DBE and against [Griggs]."

On December 23, DBE filed its "motion for entry of final judgment." It alleged Griggs had not paid the $6,600 sanction awarded on December 1 and requested rendition of a final judgment for damages, lien foreclosure, and attorney's fees. On December 27, the court signed an order granting all the relief requested by DBE. The record indicates that in February 2017 Griggs deposited $6,600 in the registry of the court which DBE was later permitted to withdraw.

Etter's claim against Griggs alleged she did not fully pay Etter for drilling test wells. Griggs' pleadings alleged Etter was vicariously liable for DBE's actions with regard to the

3

well it drilled. Griggs alleged Etter thus was jointly and severally liable for the damage-producing conduct of DBE.

Etter and Ball filed a hybrid motion for summary judgment on January 12, 2017. In part, they alleged because Griggs' claims against them were derivative of those against DBE and because judgment was for DBE on the same claims, Griggs' derivative claims against Etter and Ball could not succeed as a matter of law. Concerning Griggs' failure to fully pay for test wells, Etter sought a money judgment and an award of attorney's fees.

The court granted Etter's motion for summary judgment in all respects and rendered final judgment. This appeal followed.

Analysis

Issues One and Two: Sanctions

Through her first and second issues, Griggs challenges the justness of the trial court's December 1 sanctions order, striking her counterclaim, and the December 27 sanctions order, rendering judgment for DBE.

An appellate court reviews a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex. 1986) (per curiam). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985).

Sanctions for discovery abuse serve three legitimate purposes: to secure compliance with the discovery rules; to deter other litigants from similar misconduct; and

4

to punish violators. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex. 1992) (orig. proceeding). A sanction under Texas Rule of Civil Procedure 215 must be "just." TEX. R. CIV. P. 215.2(b); *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). A sanction's justness depends on two factors. *Chrysler Corp.,* 841 S.W.2d at 849. "First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed." *Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (citing *TransAmerican,* 811 S.W.2d at 917). "A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender." *Id.* "The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Id.* A trial court may not, however, impose a sanction that is more severe than necessary to satisfy its legitimate purpose. *Hamill v. Level,* 917 S.W.2d 15, 16 (Tex. 1996) (per curiam).

"Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purpose." *TransAmerican,* 811 S.W.2d at 917. "[C]ourts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* A "death-penalty sanction" is any sanction that adjudicates a claim and precludes presentation of the case on its merits. *Davenport v. Scheble,* 201 S.W.3d 188, 193 (Tex. App.—Dallas 2006, pet. denied). Imposition of a death-penalty sanction is especially concerning because in doing so a court renders judgment without considering the case's merits. *Hamill,* 917 S.W.2d at 16. In short, "[t]he hallmarks of due process for sanctions awards are that they be just and not excessive."

5

*Nath v. Tex. Children's Hosp.,* 446 S.W.3d 355, 365 (Tex. 2014) (citing *TransAmerican,* 811 S.W.2d at 917).

Rule 215.2(b)(5) provides in instances where a party fails to comply with a discovery order or request a trial court may render as a sanction an order "striking out pleadings or parts thereof, staying the action until the order is obeyed, dismissing the action with or without prejudice, or rendering judgment by default against the disobedient party." TEX. R. CIV. P. 215.2(b)(5). "When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery." *TransAmerican,* 811 S.W.2d at 918.

The Constitution limits a court's power to dismiss a case without giving a party the opportunity for a hearing on the merits of its cause. *Id.* Accordingly, death-penalty sanctions "should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican,* 811 S.W.2d at 918. And due process compels that a death-penalty sanction may not be used to adjudicate the merits of a claim or defense unless the offending party's conduct during discovery justifies a presumption that her claims or defenses lack merit. *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 372 S.W.3d 177, 184 (Tex. 2012) (citing *TransAmerican,* 811 S.W.2d at 918). "However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *TransAmerican*, 811 S.W.2d at 918.

6

Before imposing a death-penalty sanction, a trial court must first consider the availability of less stringent sanctions and whether a lesser sanction would adequately promote compliance, deterrence, and punishment of the offender. *Chrysler Corp.,* 841 S.W.2d at 849; *TransAmerican,* 811 S.W.2d at 917.

The record in such cases must demonstrate the trial court's consideration of less stringent sanctions, and in all but the most exceptional cases, that the court tested a less stringent sanction before striking the offending party's pleading. *Cire v. Cummings,* 134 S.W.3d 835, 842 (Tex. 2004); *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex. 1993) (orig. proceeding). For that reason, "the record should contain some explanation of the appropriateness of the sanctions imposed." *Spohn Hosp.,* 104 S.W.3d at 883.

Issue One: December 1 Order

By her first issue, Griggs contends the court erred by striking her counterclaim against DBE. We will overrule the issue.

At the November 21 hearing, DBE's argument that Griggs had failed to comply completely with the court's July 14 order was not disputed. The discovery DBE sought related directly to its defense of Griggs' claims for damages allegedly caused by the untimely completion of the well and its contamination. One topic addressed at the hearing concerned whether Griggs' failure to do so was attributable to Griggs or to conduct of her counsel. From the presentations the court heard, it reasonably could have concluded the fault lay with Griggs. The record reflects the required nexus among the offensive conduct, the offender and the sanction. *Spohn Hosp.*, 104 S.W.3d at 882.

We find the court also could have determined Griggs' failure to produce documents supporting her crop damage claim justified a presumption that claim lacked merit. *See Paradigm Oil,* 372 S.W.3d at 184; *TransAmerican,* 811 S.W.2d at 918; *5 Star Diamond, LLC v. Singh,* 369 S.W.3d 572, 578 (Tex. App.—Dallas 2012, no pet.) (discovery sanctions may be used to adjudicate merits of a party's claims only when the party's hindrance of the discovery process justifies a presumption that its claims lack merit) (citing *Cire,* 134 S.W.3d at 841). Griggs' pleadings alleged some twenty acres required replanting because of the delayed completion of the well, and yielded only 60 bushels of corn an acre compared with the 160-bushel yield of the balance of the quarter section. She alleged a sales price of $3.89 per bushel, resulting, she alleged, in a $7,780 loss, plus seed and planting expense. She further alleged she was unable to plant a crop on another tract of 109 acres, resulting in the loss of 17,440 bushels, worth $67,841.60, for a total loss for the 2015 crop year of $75,621.60. Griggs' counsel agreed her pleadings alleged a "specific crop loss by acre," and that DBE had requested production of documents typically used for proof of such claims, such as "the receipts for the other corn that was harvested." Counsel was able to express no reason for Griggs' failure to produce such common documents.

In a reply brief in this court, Griggs contends the court heard no evidence that she possessed information she did not provide. *See Tanner,* 856 S.W.2d at 729 (when motion for sanctions asserts respondent has failed to produce document within its possession, custody or control, movant has burden to prove the assertion). We see no abuse of discretion in the trial court's implicit conclusion that a landowner engaged in farming of

8

the scope Griggs alleged has within her possession, custody or control documents to support an allegation she sold a corn crop for $3.89 per bushel.[1]

As for whether death-penalty sanctions were excessive, the determinative question is whether a lesser sanction would have served the purposes of compliance, deterrence, and punishment. *TransAmerican,* 811 S.W.2d at 917; *5 Star Diamond, LLC,* 369 S.W.3d at 579. The court unsuccessfully attempted to secure Griggs' compliance by ordering responses and assessing a monetary sanction. The insufficiency of her responses was, as we have noted, undisputed at the November 21 hearing.

The court heard also, without dispute, a recitation of DBE's efforts to obtain the documents, including letters to Griggs' counsel; a response after DBE filed its first motion to compel that produced "[not] much of anything"; the court's grant of the first motion to compel with monetary sanctions and responses ordered in ten days; additional correspondence to counsel after the expiration of the ten days, resulting in a failed promise of a response in a week; Griggs' provision after DBE filed its second motion to compel of "partial answers to interrogatories," but nothing bearing on the "big loss" Griggs claimed, the crop damage, or bearing on actual damage or contamination to the well. Those claims were the foundation of Griggs' counterclaim, and the focus of the discovery dispute.

---

[1] Griggs' discovery responses reported both her original damage calculation, contained in her pleadings, and a "[r]evised calculation, based on revised yield, based on total acres in field that was planted deducting damaged acreage. 110 acres of irrigated corn at 180 bu / acre = 19,800 bushels."

Discovery in the case was conducted under Level 2. TEX. R. CIV. P. 190.3. The record contains no trial setting and there is no indication any oral depositions were conducted. The first response date for written discovery was April 8, 2016, the deadline for Griggs to respond to DBE's interrogatories and requests for production. Thus the discovery period in the case was to conclude on January 9, 2017.

By November 21, the allotted discovery period was almost completed. Griggs' recalcitrance in answering what counsel agreed were "standard" discovery requests had already, inordinately, consumed the time of the parties' counsel and the trial court. As against Griggs' contention the court was required first to try some other avenue to secure responses to "standard" written discovery requests bearing on her counterclaim, on the record presented, we find the death-penalty sanction the court imposed on the counterclaim against DBE through the December 1 order was not excessive. Because the sanction imposed was directly related to Griggs' improper conduct and was not excessive, and because we presume by Griggs' conduct her counterclaim lacked merit, we overrule Griggs' first issue.

Issue Two: Sanction Entering Judgment

By her second issue, Griggs argues the trial court erred by entering judgment in DBE's favor as a sanction for her failure to pay attorney's fees awarded in its November 21 order. We agree, and will sustain the issue.

After Griggs filed a response opposing DBE's second motion to compel, DBE filed a reply that said the sanctions sought by the motion, which included striking Griggs' counterclaim, "do not deprive Griggs of her opportunity to challenge DBE's claims.

10

Instead, DBE seeks to strike claims for which Griggs has refused to provide discovery despite this Court's order requiring her to do so." At the outset of the November 21 hearing, DBE reiterated that intention, telling the court, "We're not seeking death-penalty sanctions on the entire case. They can still put on a defense to our lien foreclosure case . . . ." After further discussions, the court granted DBE's motion to strike Griggs' counterclaim, ordered additional attorney's fees and ordered Griggs' defensive claims struck if she failed to pay within ten days. Its written order specified that if Griggs failed to pay $6,600 to DBE within ten days, judgment would be entered in DBE's favor.

We are unable to square the court's order with the requirements for such death-penalty sanctions. The threatened sanction was not conditioned on a failure to provide further needed discovery, but merely on the payment of $6,600. We cannot see how Griggs' failure to pay the ordered attorney's fees gives rise to a presumption she had no meritorious defense to DBE's lien foreclosure action. *See Hamill,* 917 S.W.2d at 16 (trial court may not use death-penalty sanction to deny a litigant a decision on the merits of the case unless it finds the sanctioned party's conduct justifies a presumption that its claims or defenses lack merit); *Khan v. Valliani,* 439 S.W.3d 528, 535 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (finding litigant's failure to pay $400 attorney's fee revealed nothing about the truth or merit of her claims). "Although punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions." *TransAmerican*, 811 S.W.2d at 918 (citations omitted). We find the death-penalty sanction imposed to grant DBE a judgment against Griggs constituted such a prohibited "trial by sanctions" in this case, and thus was excessive.

11

For those reasons, we find the trial court abused its discretion by entering judgment for DBE as a sanction. We sustain Griggs' second issue.

Issue Three

By her third issue, Griggs contends she is not estopped by the invited error doctrine to challenge the court's rulings striking her counterclaim against DBE and later granting DBE a judgment on its claim. The issue anticipates a contention DBE brings in its brief on appeal, asserting Griggs' counsel suggested the relief contained in the December 1 order by his remarks at the November 21 hearing. Because we have found no abuse of discretion in the court's order striking Griggs' counterclaim, we need not address invited error with respect to that sanction. With regard to Griggs' second issue challenging the judgment granted DBE, we agree with Griggs the invited error doctrine has no application.

It is said in Texas law the invited error doctrine is "grounded in even justice and dictated by common sense." *Neasbitt v. Warren,* 22 S.W.3d 107, 112 (Tex. App.—Fort Worth 2000, no pet.) (citing *Ne. Tex. Motor Lines, Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 487-88 (Tex. 1942)). The doctrine "applies to situations where a party requests the court to make a specific ruling, then complains of that ruling on appeal." *In re Dep't of Family & Protective Servs.,* 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding) (citing *Tittizer v. Union Gas Corp.,* 171 S.W.3d 857, 862 (Tex. 2005)). Consequently, "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested." *Tittizer,* 171 S.W.3d at 862; *Dalworth Restoration, Inc. v. Rife-Marshall,* 433 S.W.3d 773, 787 (Tex. App.—Fort Worth 2014, pet. dism'd

12

w.o.j.) ("The invited error doctrine prevents a party from asking for relief from the trial court and later complaining on appeal that the trial court gave it").

From our review of the record, we agree with Griggs that her trial-court lawyer expressed frustration at the hearing over failures of communication from his client, but did not invite the court to enter a final judgment against Griggs. With regard to the entry of a final judgment in the event Griggs failed to pay the $6,600 ordered, counsel's remarks at most can be read to agree the court would have the authority to issue such a sanction. Griggs' written response to DBE's second motion to compel pointed out she had named two experts "with written opinions who dispute the adequacy of the well drilled by [DBE]." She argued there was no basis to presume her defense to DBE's claim lacked merit. In short, the record does not show Griggs requested the court to enter judgment for DBE against her if she did not timely pay the $6,600 attorney's fees sanction. We sustain Griggs' third issue to the extent we conclude she is not estopped by the invited error doctrine to challenge the December 27 order on appeal.

Issue Four: Summary Judgment

Through her fourth issue Griggs challenges the trial court's grant of summary judgment in favor of Etter and Ball on their traditional and no evidence motions, which challenged Griggs' third-party claims against them.

The standard and scope of review we apply on the appeal of no evidence and traditional motions for summary judgment is settled and does not require elaboration. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC,* 520 S.W.3d 39, 45 (Tex. 2017). We review the grant of a summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164

13

S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, *Binur v. Jacobo,* 135 S.W.3d 646, 649 & n.3 (Tex. 2004), and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Cohen v. Landry's Inc.,* 442 S.W.3d 818, 821 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (so holding).

In her live third-party complaint against Etter and Ball, Griggs alleged she "acquired goods or services from B[a]ll and Etter Water Well Service by and through Dalhart Butane, a subcontractor for Etter Water Well Service, which form the basis of her complaint against B[a]ll and Etter Water Well Service herein." And Etter was liable for the actions of DBE under the doctrine of respondeat superior.

Griggs argues on appeal, "[u]pon reversal of the death penalty sanctions as prayed for by Griggs, the grounds on which Etter moved for summary judgment would be invalid and contested and should be remanded for trial." Because we will affirm the trial court's dismissal with prejudice of Griggs' counterclaims against DBE, the basis for Griggs' argument fails. The trial court did not err in rendering summary judgment that Griggs take nothing on her claims against Etter and Ball. Griggs' fourth issue is overruled.

Conclusion

The provision of the trial court's judgment dismissing Griggs' counterclaim against DBE is affirmed; all other relief granted in favor of DBE and against Griggs by the trial court's judgment is reversed, and DBE's claims against Griggs are remanded to the trial court for further proceedings. In all other respects, the trial court's judgment is affirmed.

James T. Campbell
Justice

14